**WARNING: AT LEAST ONE DOCUMENT COULD NOT BE INCLUDED!**
**You were not billed for these documents.**
**Please see below.**

| Document Number | Document Description | Pages | Document Error |
|---|---|---|---|
| Document 1 attachment | Attachment | 3 | **DOCUMENT COULD NOT BE RETRIEVED! However, it may still be viewable individually.** |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
Electronically Filed

CIVIL ACTION NO. __5:20-cv-35-TBR__

UNITED STATES OF AMERICA                                        PLAINTIFF

vs.

CHARLENE R. STASIULIS also known as                            DEFENDANTS
CHARLENE RENEE CHAVEZ, as heir of Deanna J. Bundalo
910 East Walnut Street
Mayfield, KY  42066

ANY UNKNOWN SPOUSE OF DEANNA J. BUNDALO
Serve: Warning Order Attorney

ANY UNKNOWN HEIRS AND SPOUSES OF HEIRS
OF DEANNA J. BUNDALO
*Serve*: Warning Order Attorney

## COMPLAINT FOR FORECLOSURE

Plaintiff, the United States of America, states as follows:

1.      This is a mortgage foreclosure action brought by the United States of America on behalf of its agency, the United States Department of Agriculture Rural Housing Service also known as Rural Development and at one time known as the Farmers Home Administration (hereinafter collectively "RHS").

2.      As noted herein, the original Borrower on the loan that is at issue here is deceased.  The purpose of this suit is not to make the heirs personally liable for the Borrower's loan debt.  Rather, the United States seeks to foreclose on the mortgaged property so that the property may be sold and the proceeds applied towards the outstanding debt.

3.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

4.      The United States of America, through RHS, is the holder of a promissory note ("the 1990 Note") executed for value on August 21, 1990, by Sandra Fralick, not a defendant herein.  The original principal amount of the 1990 Note was $34,300.00, bearing interest at the rate of 9 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

5.      On or about November 23, 1993, Deanna J. Bundalo, now deceased, executed and delivered to RHS an Assumption Agreement, a copy of which is attached and marked **Exhibit B**, and which is hereby incorporated by reference as if set forth at length herein.  In and by the Assumption Agreement, Deanna J. Bundalo became liable to RHS under the 1990 Note, as well as a mortgage signed by Sandra Fralick and recorded in in Mortgage Book 320, Page 367 in the Office of the Clerk of Graves, County, Kentucky.

6.      The United States of America, through RHS, is the holder of a second promissory note ("the 1993 Note") executed for value on November 23, 1993, by Deanna J. Bundalo, now deceased and not a defendant herein.  The original principal amount of the 1993 Note was $7,130.00, bearing interest at the rate of 6.5 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

7.      The 1993 Note is secured by a Real Estate Mortgage (the "1993 Mortgage") signed by Deanna J. Bundalo and recorded on November 23, 1993, in Mortgage Book 357, Page 172, in the Office of the Clerk of Graves County, Kentucky.  A copy of the 1993 Mortgage is

attached as **Exhibit D** and incorporated by reference as if set forth fully herein.  Through the 1993 Mortgage, Deanna J. Bundalo, unmarried, granted the United States through RHS a mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 910 East Walnut Street, Mayfield, Graves County, Kentucky (the "Property") and described in more detail as follows:

> Being Lot No. 2 in Block "E" as shown on the plat of the Bennett-Sutherlin Subdivision of record in Plat Book 1, Page 296, in the Graves County Clerk's Office, described as beginning at a stake at the intersection of the south line of Walnut Street with the east line of Brand Street and running thence East along the south line of Walnut Street 75 feet to a stake; thence South, parallel to Brand Street 101-1/2 feet to a stake; thence West 75 feet to a stake on the east line of Brand Street; thence North along the east line of Brand Street 102-1/2 feet to the point of beginning.
>
> BEING the same property conveyed to Deanna J. Bundalo, a single person, by Deed dated November 23, 1993 and recorded November 23, 1993, of record in Deed Book 345, Page 659, in the Office of the County Clerk of Graves County.

8.      To receive subsidies on the loan, Deanna J. Bundalo signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to the Borrower by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.

9.      Deanna J. Bundalo died intestate on November 10, 2018.  **Exhibit F**: Death Certificate.

10.     Upon the Borrower's death intestate, all of her right, title and interest in the Property vested in her heir at law, to wit, her daughter, Charlene R. Stasiulis, also known as Charlene Renee Chavez.

11.     As a result of nonpayment, the Note and Mortgage are in default.

12.     RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other

sums due under the loan documents, to be due and payable.  Further, RHS sent notice of the default, acceleration of the loan, intent to proceed with foreclosure, and opportunity for administrative review.

13.     In accordance with the loan documents, the United States is entitled to enforce the Mortgage through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

14.     As of November 18, 2019, the United States through its entity, RHS, was owed the principal amount of $10,788.73, plus $705.11 in interest, $27,706.75 for reimbursement of interest credits, escrow charges of $379.75, and fees assessed of $1,049.92, for a total unpaid balance due of $40,630.26, with interest accruing at the daily rate of $2.1073 from November 18, 2019, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States.

15.     The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's lien thereon.

16.     Defendant **Any Unknown Spouse of Deanna J. Bundalo** may assert an interest in the Property.  This defendant is called upon to come forth and assert an interest in or claim to the Property, if any, and offer proof thereof or be forever barred.  Any interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

17.     Defendant **Any Unknown Heirs and Spouses of Heirs of Deanna J. Bundalo** may assert an interest in the Property.  This defendant is called upon to come forth and assert an interest in or claim to the Property, if any, and offer proof thereof or be forever barred.  Any

interest of this defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the United States.

 18. There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

 WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

 a. Judgment *in rem* against the interests of the Defendants in the Property for the amounts stated herein, plus continuing pre- and post-judgment interest, as well as costs, disbursements and expenses advanced by the United States;;

 b. That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

 c. That the United States' lien be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

 d. That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

 e. That the Property be adjudged indivisible and be sold as a whole; and

       f.       That the United States receive any and all other lawful relief to which it may be

entitled.

                                                UNITED STATES OF AMERICA

                                                RUSSELL M. COLEMAN
                                                United States Attorney


                                              s/ William F. Campbell
                                              William F. Campbell
                                              Katherine A. Bell
                                              Assistant United States Attorneys
                                              717 West Broadway
                                              Louisville, Kentucky  40202
                                              Phone:  502/582-5911
                                              Fax:   502/625-7110
                                              bill.campbell@usdoj.gov
                                            Katherine.bell@usdoj.gov

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

**PROMISSORY NOTE**

| TYPE OF LOAN | | STATE **KENTUCKY** |
|---|---|---|
| **RH 502** | | COUNTY **GRAVES** |
| | | CASE NO. |

Date _____ **AUGUST 21** _____, 19 **90**.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____

------------------------------- **MAYFIELD, KENTUCKY** -------------------------------,

THE PRINCIPAL SUM OF **THIRTY-FOUR THOUSAND THREE HUNDRED AND 00/100** -----------

DOLLARS ($ **34,300.00** -------------------------------------), plus INTEREST on the UNPAID PRINCIPAL of

----------- **NINE** -------------PERCENT ( --------- **9** %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____, 19____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____, 19____, through _____, 19____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below:

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in _____ **396** _____ installments as indicated in the box below:

$ **272.00** _____ on _____ **SEPTEMBER 21** _____, 19 **90**, and

$ **272.00** _____ thereafter on the **21ST DAY** of each **MONTH** until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and PAYABLE **THIRTY-THREE** ( ------------- **33** ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

*Position 2*

FmHA 1940-16 (Rev. 8/87)

GOVERNMENT EXHIBIT A

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit elsewhere to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and cooperative rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certification," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for property purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

*Sandra Fralick*
SANDRA FRALICK   *(BORROWER)*   (SEAL)

_____   *(SPOUSE)*   (SEAL)

901 EAST WALNUT STREET

MAYFIELD, KENTUCKY  42066

_____

| RECORD OF ADVANCES |||||||
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $ | |

☆ U.S. Government Printing Office 1987—723-421/61516

*Position 2*

FmHA 1940-16 (Rev. 8/87)

FORM APPROVED
OMB No. 0575-0086

**USDA-FmHA**
Form FmHA 1965-15
(Rev. 6-90)

Type of Loan ___RH 502___
XX Sec. 502   ☐ Non Program   ☐ Sec. 504

Case Number: ▉▉▉▉▉

## ASSUMPTION AGREEMENT
### Single-Family Housing Loan(s)

This Agreement dated ___NOVEMBER 23___ , 19_93_ , is between the United States of America, acting through the Farmers Home Administration (herein called the Government), and ___DEANNA J. BUNDALO, a single person___

(herein called Borrower). whose mailing address is ___910 E. WALNUT ST., MAYFIELD, KY  42066___

The Government is the holder of debt instrument(s) secured by the following described security instrument(s) executed by ___SANDRA FRALICK, a single person___

Case Number ___▉▉▉▉▉___ , on real property described therein which is located in ___GRAVES___ County, State of ___KENTUCKY___

| Type Instrument | Date Executed | Office Where Recorded | Book/Volume/Document Number | Page Number |
|---|---|---|---|---|
| Real Estate Mtg. | 8/21/90 | County Court Clerk | 320 | 367 |
| | | | | |
| | | | | |

In consideration of the assumption of indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. Borrower hereby assumes liability for and agrees to pay to the order of the Government at the office of the Farmers Home Administration shown below (or other location as may later be specified) the principal sum of ___THIRTY-ONE THOUSAND AND NO/100___ dollars ($___31,000.00___) plus interest at the rate of ___SIX AND ONE-HALF___ percent (___6.5___%) per annum, payable in installments as follows:

$___191.00___ on ___DECEMBER 23___ , 19_93_ , and

$___191.00___ thereafter on the ___23RD___ of each ___MONTH___ until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable ___THIRTY-THREE___ (___33___) years from the date of this Agreement.

2. Payments of principal and interest shall be applied in accordance with Farmers Home Administration's accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with Farmers Home Administration regulations in effect when a late charge is assessed.

3. The provisions of the debt instrument(s) hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower hereby assumes the obligations of and agrees to comply with all covenants, agreements, and conditions contained in said instrument(s), as modified herein, as though Borrower had executed them as of the date thereof as principal obligor(s).

4. Provisions of the debt and security instrument(s) which require that the borrower occupy the FmHA-financed dwelling or graduate to another credit source do not apply to assumption on ineligible (Non Program) terms.

5. This Agreement is subject to present regulations of the Farmers Home Administration and to its future regulations which are not consistent with the express provisions hereof.

___(Co-signer)___

___Borrower___

**UNITED STATES OF AMERICA**
**FARMERS HOME ADMINISTRATION**

___Borrower___

By ___CARTER D. RUSSELL___

Title ___County Supervisor___

Former Borrower Released From Liability _____

Date ___NOVEMBER 23, 1993___

FmHA County Office Address: ___Rt. #8,    d Jimtown Rd., Mayfield, KY  4    6___

COPY 2-COUNTY OFFICE CASE FILE

GOVERNMENT EXHIBIT B

Position 5

**USDA-FmHA**
Form FmHA 427-1 KY
(Rev. 6-91)

## REAL ESTATE MORTGAGE FOR KENTUCKY

THIS MORTGAGE is made and entered into by <u>Deanna J. Bundalo, a single person,</u>

residing in _____ **Graves** _____ County, Kentucky, whose post office

address is <u>910 East Walnut Street, Mayfield,</u> , Kentucky <u>42066</u>, herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| August 21, 1990 | $34,300.00 | 9.0% | August 21, 2023 |

"The above described promissory note which now has the outstanding principal balance of $33,894.43, with accrued interest in the amount of $1,037.58, has been modified by an assumption agreement dated November 23, 1993."

| | | | |
|---|---|---|---|
| November 23, 1993 | $7,130.00 | 6.5% | November 23, 2026 |

(The interest rate for limited-resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Adminstration.

And it is the purpose and intention of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower.

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a, or any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby sell, convey, and assign, with general warranty, unto the Government the following property situated in the State of Kentucky,

County(ies) of _____ **Graves** _____ :

Being Lot No. 2 in Block "E" as shown on the plat of the Bennett-Sutherlin Subdivision of record in Plat Book 1, Page 296, in the Graves County Clerk's Office, described as beginning at a stake at the intersection of the south line of Walnut Street with the

FmHA 427-1 KY (Rev. 6-91)

NOV 2 9 1993

GOVERNMENT EXHIBIT
D

east line of Brand Street and running thence East along the south line of Walnut Street 75 feet to a stake; thence South, parallel to Brand Street 101-½ feet to a stake; thence West 75 feet to a stake on the east line of Brand Street; thence North along the east line of Brand Street 102-½ feet to the point of beginning.

Being the same real estate conveyed to Deanna J. Bundalo, a single person, by deed from Sandra Fralick, a single person, dated November **23**, 1993, and of record in Deed Book **345**, page **659**, Graves County Clerk's Office.

This mortgage is second and inferior to the following mortgage in favor of Farmers Home Administration, and recorded in Graves County Clerk's Office:  Mortgage recorded in Mortgage Book 320, page 367.

being the same (or part of the same) land conveyed*

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest there-in-all of which are herein called "the property"; All rents, profits and income from the property covered by this mortgagee are hereby assigned to the mortagee for the purpose of discharging the debt hereby secured. Permission is hereby given to the mortgagor, so long as no default exist hereunder, to collect such rents, profits and income for use in accordance with Farmers Home Administration regulations.

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe, and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property. Upon termination of this mortgage, after payment in full, the mortgagee. at the mortgagor's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien and (f) waive any other of its rights under this instrument. Also any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government--whether once or often--in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statue, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statue, age or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity. as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given in the case of the Government to Farmers Home Administration at 333 Waller Avenue, Lexington, Kentucky 40504, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Given under the hand(s) and seal(s) of Borrower this ___23rd___ day of ___November___, 19 _93_.

_Deanna J Bundalo_ (SEAL)

Deanna J. Bundalo

_____ (SEAL)

**STATE OF KENTUCKY**

}ss:

**COUNTY OF** __GRAVES__

Before me, ___the undersigned___, a Notary Public in and for

the County of ___Graves___ personally appeared ___Deanna J. Bundalo,___

___a single person,___ and xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx his wife,

who acknowledged that they executed the foregoing instrument on the ___23rd___

day of ___November___, 19 _93_, as their free act and deed.

WITNESS my hand and official seal this ___23rd___ day of _November_, 19 _93_

(SEAL)

My commission expires: 2/3/94

_Sharon Oliver_

Ky. State-at-Large                                   *Notary Public*

### PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

___Dennis L. Null, Attorney___

*(name)*

___223 North 7th Street, P.O. Box 5040, Mayfield, Kentucky 42066___

*(address)*

_Dennis L Null_

*(Signature)*

### RECORDER'S CERTIFICATE

**STATE OF KENTUCKY**

}ss:

**COUNTY OF** __GRAVES__

I, ___Glen Bruce___, Clerk of the County Court for the County aforesaid, do certify

that the foregoing mortgage was on the ___23rd___ day of ___November___, 19 _93_, lodged for record

at __3:32__ o'clock __P__.M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this ___23rd___ day of _November_, 19 _93_

Mortgage Book 357
Page 172

_Glen Bruce_

Clerk of _____ County Court

By __Wilford__, D.C.

*U.S. Government Printing Office: 1991 — 558-764

FmHA Instruction 1951-I
Exhibit A

## UNITED STATES DEPARTMENT OF AGRICULTURE
## FARMERS HOME ADMINISTRATION

### Subsidy Repayment Agreement

Date of Note 11/23/93  Amount of Note $31,000.00 Date of mortgage 11/23/93
(Assumption)     (Assumption)

Date of Note 11/23/93  Amount of Note $7,130.00 Date of mortgage 11/23/93

Type of assistance:

1. Interest credit /xx/
2. Homeownership Assistance
   Program /  /

Address of Property:  910 E. WALNUT ST.

MAYFIELD, KY  42066

BORROWER:     DEANNA J. BUNDALO, a single person

CO-BORROWER:

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan

GOVERNMENT
EXHIBIT
E

(9-27-79)  SPECIAL PN

NOV 2 3 1993

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us).  If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid.  The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

    (a)  Unpaid balance of loans secured by a prior mortgage as well as
    real estate taxes and assessments levied against the property which
    are due will be paid.

    (b)  Unpaid principal and interest owed on FmHA RH loans for the
    property and advances made by FmHA which were not subsidy and are
    still due and payable will be paid to the Government.

    (c)  I (we) will receive from the sale proceeds actual expenses
    incurred by me (us) necessary to sell the property.  These may include
    sales commissions or advertising cost, appraisal fees, legal and
    related costs such as deed preparation and transfer taxes.  Expenses
    incurred by me (us) in preparing the property for sale are not allowed
    unless authorized by the Government prior to incurring such expenses.
    Such expenses will be authorized only when FmHA determines such expenses
    are necessary to sell the property, or will likely result in a return
    greater than the expense being incurred.

    (d)  I (we) will receive the amount of principal paid off on the
    loan calculated at the promissory note interest rate.

    (e)  Any principal reduction attributed to subsidized interest
    calculations will be paid to the Government.

    (f)  I (we) will receive my original equity which is the difference
    between the market value of the security, as determined by the
    FmHA appraisal at the time the first loan subject to recapture of
    subsidy was made, and the amount of the FmHA loan(s) and any
    prior lien.  This amount is --00.00-- _____ and represents
    --00.0-- _____ percent of the market value of the security.  (The

FmHA Instruction 1951-I
Exhibit A
Page 3

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.)  The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g)  The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation.  The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy or
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 40 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h)  I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above.  I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i)  If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent.  In such cases it will be determined based
on the average interest rate paid by me (us).

(j)  If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent:  n/a        .  This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt.  This percentage will be entered at the time I (we) sign this
agreement.

(k)  If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4

7    When a FmHA RH loan is repaid by other than foreclosure, voluntary
conveyance, or sale of property, the amount of subsidy to be repaid the
Government will be determined in the same manner as described in paragraph
6 of this Exhibit but based on the appraised value determined by FmHA
instead of sales price. In such cases, the subsidy due the Government
will remain a lien on the property until paid. It must be paid upon non
occupancy, sale, or transfer of title to the property.

8    I (we) have read and agree to the provisions of this agreement.

_____ Borrower
DEANNA J. BUNDALO

_____ Co-Borrower

NOVEMBER 23, 1993
     Date signed

Accepted and Agreed to
By _____ (FmHA Official)
   CARTER D. RUSSELL
   County Supervisor          (Title)

NOVEMBER 23, 1993
          Date

oOo

# COMMONWEALTH OF KENTUCKY

## REGISTRAR OF VITAL STATISTICS
### CERTIFIED COPY



5813122

**KENTUCKY CERTIFICATE OF DEATH**

116 201840478

Case #: E201811120177

| | |
|---|---|
| 1a. DECEDENT'S LEGAL NAME (First, Middle, Last) (Include AKA's if any) **DEANNA JEAN BUNDALO** | 1b. IF FEMALE, DECEDENT'S LAST NAME PRIOR TO FIRST MARRIAGE **BOWLES** |
| 2. SEX **FEMALE** | |

| | | | | | |
|---|---|---|---|---|---|
| 3. ACTUAL OR PRESUMED DATE OF DEATH (Month/Day/Year) (Spell Month) **November 10, 2018** | 4. SOCIAL SECURITY NUMBER **-7086** | 5a. AGE-LAST BIRTHDAY (Years) **78** | 5b. UNDER 1 YEAR Months Days | 5c. UNDER 1 DAY Hours Minutes | 6. DATE OF BIRTH (MM/DD/YYYY) | 7. COUNTY OF DEATH **DAVIESS** |

8. PLACE OF DEATH (Check only one)
HOSPITAL: ☐ Inpatient ☐ ER/Outpatient ☐ Dead on Arrival OTHER: ☐ Hospice Facility ☐ Nursing Home/Long Term Care Facility ☒ Decedent's Residence ☐ Other (Specify)

| | |
|---|---|
| 9. FACILITY NAME (If not institution, give street and number) **10505 HWY 431** | 10. CITY OR TOWN, STATE AND ZIP CODE **UTICA, KY 42376** |

| | | |
|---|---|---|
| 11. BIRTHPLACE (City and State or Foreign Country) **THAYER, WEST VIRGINIA** | 12. MARITAL STATUS ☐ Married ☐ Married but Separated ☒ Widowed ☐ Divorced ☐ Never Married | 13. SURVIVING SPOUSE (If wife, give name prior to first marriage) |

| | | |
|---|---|---|
| 14. DECEDENT'S USUAL OCCUPATION (Kind of work done during most of working life.) (Do not use retired) **LABORER** | 15. KIND OF BUSINESS/INDUSTRY **PILGRIM'S PRIDE** | 16. WAS DECEDENT EVER IN U.S. ARMED FORCES? ☐ Yes ☒ No |

| 17a. RESIDENCE - State **KENTUCKY** | 17b. COUNTY **DAVIESS** | 17c. CITY OR TOWN **UTICA** | 17d. STREET AND NUMBER **10505 HWY 431** | 17e. ZIP CODE **42376** | 17f. INSIDE CITY LIMITS? ☐ Yes ☒ No |
|---|---|---|---|---|---|

18. DECEDENT'S EDUCATION (Check the box that best describes the highest degree or level of school completed at the time of death.)
☐ 8th Grade or Less
☐ 9th - 12th Grade; No Diploma
☒ High School Graduate or GED Completed
☐ Some College Credit but No Degree
☐ Associates Degree (e.g., AA, AS)
☐ Bachelor's Degree (e.g., BA, AB, BS)
☐ Master's Degree (e.g., MA, MS, MEng, MEd, MSW, MBA)
☐ Doctorate (e.g., PhD, EdD) or Professional Degree (e.g., MD, DDS, DVM, LLB, JD)

19. DECEDENT OF HISPANIC ORIGIN? (Check the box that best describes whether the decedent is Spanish/Hispanic/Latino. Check the "No" box if the decedent is not Spanish/Hispanic/Latino.)
☒ No, not Spanish/Hispanic/Latino
☐ Yes, Mexican, Mexican American, Chicano
☐ Yes, Puerto Rican
☐ Yes, Cuban
☐ Yes, other Spanish/Hispanic/Latino
(Specify) _____

20. DECEDENT'S RACE (Check one or more races to indicate what the decedent considered himself or herself to be)
☒ White
☐ Black or African American
☐ Native Hawaiian
☐ Asian Indian
☐ Chinese
☐ Filipino
☐ Japanese
☐ Korean
☐ Vietnamese
☐ Samoan
☐ Other Asian (Specify)
☐ Other Pacific Islander (Specify)
☐ American Indian or Alaska Native (Name of the enrolled or principal tribe)
☐ Other (Specify)

| | |
|---|---|
| 21. FATHER'S NAME (First, Middle, Last) **GEORGE LEWIS RICHMOND** | 22. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) **LILLIAM E BOWLES** |

| 23a. INFORMANT'S NAME **CHARLENE R STASIULIS** | 23b. RELATIONSHIP TO DECEDENT **DAUGHTER** | 23c. MAILING ADDRESS (Street and Number, City, State, Zip Code) **910 E WALNUT STREET, MAYFIELD, KY 42066** |
|---|---|---|

| 24. METHOD OF DISPOSITION (Check only one) ☐ Burial ☒ Cremation ☐ Donation ☐ Entombment ☐ Removal from State ☐ Other (Specify) | 25. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) **HALEY MCGINNIS CREMATORY** | 26. LOCATION - City, Town, and State **OWENSBORO, KY** |
|---|---|---|

| 27. SIGNATURE OF FUNERAL SERVICE LICENSEE (Or person acting as such) **KAY EVERLY, FUNERAL DIRECTOR** (Must Use Blue/Black Ink) Electronic signature is legally acceptable pursuant to KRS 369.107 & KRS 369.118 | DATE SIGNED (MM/DD/YYYY) **11/12/2018** | 28. KY LICENSE NUMBER (of licensee) **4822** | 29. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY **HALEY-MCGINNIS FUNERAL HOME & CREMATORY 519 LOCUST STREET OWENSBORO, KY 42301** |
|---|---|---|---|

| 30. DATE PRONOUNCED DEAD (MM/DD/YYYY) **11/10/2018** | 31. ACTUAL OR PRESUMED TIME OF DEATH **0306** | 32. WAS MEDICAL EXAMINER OR CORONER CONTACTED? ☐ Yes ☒ No |
|---|---|---|

**CAUSE OF DEATH**

Approximate Interval Between Onset and Death

33. PART I. Enter the chain of events - diseases, injuries, or complications - that caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on each line.

IMMEDIATE CAUSE (Final disease or condition resulting in death) -->
a. **MALIGNANT NEOPLASM OF UNSPECIFIED PART OF RIGHT BRONCHUS OR LUNG** — **GREATER THAN 1 YEAR(**

DUE TO (OR AS A CONSEQUENCE OF):
b. _____

Sequentially list conditions, if any, leading to the cause listed on line a.
DUE TO (OR AS A CONSEQUENCE OF):
c. _____

Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST
DUE TO (OR AS A CONSEQUENCE OF):
d. _____

PART II. Enter other significant conditions contributing to death, but not resulting in the underlying cause given in Part I

34. MANNER OF DEATH
☒ Natural ☐ Accident
☐ Homicide ☐ Pending Investigation
☐ Suicide ☐ Could not be Determined

| 35. WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? | 38. IF FEMALE: ☒ Not pregnant within past year ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Pregnant at time of death ☐ Unknown if pregnant within past year |
|---|---|---|
| 36. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No | ☐ Yes ☐ Probably ☐ No ☒ Unknown | |

| 39. DATE OF INJURY (Month/Day/Year) (Spell Month) | 40. TIME OF INJURY | 41. INJURY AT WORK? ☐ Yes ☐ No | 42. PLACE OF INJURY (e.g., Decedent's home; construction site; restaurant; wooded area) | 43. IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/Operator ☐ Pedestrian ☐ Passenger ☐ Other (Specify) |
|---|---|---|---|---|

| 44. DESCRIBE HOW INJURY OCCURRED: | 45. LOCATION OF INJURY (Street and number, City or Town, State, Zip Code) |
|---|---|

46. TO BE COMPLETED BY CERTIFIER:
To the best of my knowledge, death occurred at the time, date, and place, and due to cause(s) and manner stated.

| SIGNATURE **TAMBERLY MCCOY M.D.** (Must Use Blue/Black Ink) Electronic signature is legally acceptable pursuant to KRS 369.107 and KRS 369.118 | 47. DATE CERTIFIED (MM/DD/YYYY) **11/20/2018** |
|---|---|
| | 48. LICENSE NUMBER **34958** | 49. TITLE OF CERTIFIER **PHYSICIAN** |

50. NAME, ADDRESS, AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH (ITEM 33) **TAMBERLY MCCOY**
**DR TAMBERLY L. MCCOY MD PLLC, 2316 MAYFAIR DR, SUITE 3, OWENSBORO, KY 42301**

| 51. REGISTRAR'S SIGNATURE *Christina S. Stewart* | 52. DATE FILED (MM/DD/YYYY) **11/20/2018** |
|---|---|

This is to certify that this is a true and correct copy of the certificate of birth, death, marriage or divorce of the person therein named and that the original certificate is registered at the Kentucky Office of Vital Statistics under the file number s

DATE ISSUED  12/03/2019

*Christina S. Stewart*
State Registrar

GOVERNMENT EXHIBIT F

FORM VS NO. 1-A
(REVISED 08/2015)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | CHARLENE R. STASIULIS, ET AL. |
| **(b)** County of Residence of First Listed Plaintiff _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant  GRAVES<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☑ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTION 1345

Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
$40,630.26

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 2/21/2020 | s/ William F. Campbell |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# United States District Court

### WESTERN DISTRICT OF KENTUCKY
### AT PADUCAH

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Charlene R. Stasiulis, et al.

**TO:**   (Name & Address of Defendant)

CHARLENE R. STASIULIS also known as
CHARLENE RENEE CHAVEZ, as heir of Deanna J. Bundalo
910 East Walnut Street
Mayfield, KY 42066

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY 40202

an answer to the complaint which is herewith served upon you, within _____ twenty-one (21) _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____          _____
**CLERK**                                                                              DATE


_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and Complaint was made by me[1] | Date |
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐    Served personally upon the defendant.  Place where served:

_____

☐    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐    Returned unexecuted:

_____
_____
_____

☐    Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on    _____      _____
                       Date                                         Signature of Server

---

[1]   **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**